No. 23,845.

FRANCIS L. McADAM, *Appellee,* v. VIOLA LEAK, *Appellant.*

SYLLABUS BY THE COURT.

1. VENDOR AND PURCHASER—*Sale of Land—Unconditional and Complete Contract Executed.* Where a written offer to sell land for a stated sum in cash is accompanied by the words—"will send you the abstract for inspection," a letter of acceptance is not rendered conditional by including a direction to send the abstract to the county seat to be brought down to date and a statement that the buyer will prepare and forward a deed. Nor does the fact that time and place of payment are not specified render the contract incomplete, these elements being supplied by implication.

2. SAME—*Contract to Sell Land—Vendor Without Full Title—Damages.* The fact that the vendor did not have full title to the land contracted to be sold is not a defense to an action by the purchaser for damages for breach of the contract by failure to convey.

3. SAME—*Contract for Sale of Land—No Misrepresentation or Unfairness on the Part of Purchaser Shown.* In the absence of other evidence of misrepresentation or unfair dealing the enforcement of a contract for the sale of land cannot be refused merely because the agreed price was $1,200 when it was worth $1,800, and the vendor was a woman living at a distance from the land, which she had never seen and the value of which she did not

know, while the purchaser was a real-estate dealer owning land in the vicinity and familiar with values.

4. SAME—*Evidence—Award of Damages.* A complaint that no evidence was introduced in support of the amount of damages awarded is held unavailable because the journal recites the introduction of evidence and because it is clear that the amount was not excessive.

5. SAME—*Contract to Sell Land—Breach by Vendor—Measure of Damages.* In an action brought by the purchaser on account of the refusal of the vendor to perform a contract for the sale of land the difference between the agreed price and the market value at the time of the breach is held to have been the proper measure of damages. If the rule were to be adopted that the vendor is not required to compensate the purchaser for the loss of his bargain where a conveyance is prevented by a defect in title which was unknown to the vendor when the contract was made, it would not apply here, for while the defendant did not have a full title to the land, that fact was known to her when she agreed to sell, and the reason she gave for refusal was the inadequacy of the price.

Appeal from Hamilton district court; CHARLES E. VANCE, judge. Opinion filed July 8, 1922. Affirmed.

*George Getty,* of Syracuse, and *W. N. Redwine,* of McAlester, Okla., for the appellant.

*L. A. Madison,* and *Carl Van Riper,* both of Dodge City, for the appellee.

The opinion of the court was delivered by

MASON, J.: Francis L. McAdam sued Viola Leak for the specific performance of a contract for the sale to him of a tract of land in Hamilton county. A demurrer to the petition was overruled and the defendant elected to plead no further. Performance of the contract having become impossible judgment was rendered in favor of the plaintiff for $600 as damages. The defendant appeals.

The objection made to the petition is that the negotiations between the parties, which were wholly in writing, the plaintiff being in Dodge City and the defendant in Crowder, Okla., did not result in a completed contract. The validity of the objection may be determined from a consideration of portions of the last four letters passing between them. On October 22, 1919, the plaintiff wrote to the defendant:

"My offer was for $1,400.00 with a $700.00 cash payment and $700.00 in two years at six per cent, or $1,200.00 cash and you reserve the oil and gas rights. If you decide to accept either of these propositions you may do so."

On October 30, 1919, the defendant answered:

"Your letter of the 22d at hand and will take your offer, the $1,200.00 cash proposition and reserve the oil and gas rights. Will send you the abstract for inspection, if you are still ready for the cash deal."

The next day the plaintiff replied:

"Your letter of the 30th inst. at hand and contents noted, and will say that I will take your land at $1,200.00 cash and you may reserve the oil and gas rights. You may send your abstract out to Syracuse and have it brought down to date and forward it to me and I will examine it and if it is satisfactory will draw a deed and send to you for your signature."

On November 25, 1919, the defendant wrote:

"Your letter of the 21st at hand and will say the reason I did not answer I did not consider that $1,200.00 was enough. You sure have went to a lot of trouble to send me a deed to sign. I am no widow. My husband is living, but he is stricken with paralysis and not able to write.

"I have been offered 1700 and 75 dollars since you made your offer and I can reserve the oil and gas rights. So you will have to do better if you get it."

1. The defendant urges that the plaintiff's letter of October 31 imposed two new conditions—that the abstract should be sent to Syracuse and brought down to date, and that the deed should be upon a form to be furnished by him.

The defendant in her letter of October 30 offered to send the abstract. In the absence of anything to indicate the contrary "the abstract" must be regarded as referring to an abstract of title brought down to date. The statement that it would be sent "for inspection" did not imply that it would be incomplete. The purpose of inspection was to determine the title at that time. As the land was in Hamilton county it was obviously necessary that the abstract should be sent to Syracuse to be brought down to date unless that had been already done. No new condition was imposed by what was said concerning it.

The statement in the plaintiff's letter that he would draw a deed and send it to the defendant for her signature was a mere offer to perform the clerical work of preparing a deed for execution. It did not amount to a reservation of a right to require a particular form of conveyance. Nothing having been said to the contrary the parties are deemed to have contemplated the execution of a deed in the usual form.

It is contended that the minds of the parties did not meet upon all the essential matters of the contract because nothing had been said as to when and where the purchase price was to be paid. In that

situation the defendant could have insisted upon receiving it at her residence in exchange for the deed as soon as a reasonable time had elapsed for an examination of the abstract. She did not break off the deal, however, because of any question of time or place of payment or of the abstract or deed, but upon the ground that the price was too low.

2. The defendant also urges that under the allegations of the petition she had no authority to bind her husband, who owned a half interest in the land and was not a party to the action. This would prevent a decree for specific performance unless the plaintiff were willing to accept a deed conveying the defendant's interest alone, with an abatement in the price. (*Williams v. Wessels,* 94 Kan. 71, 145 Pac. 856.) But even if the defendant had had no interest in the land at all she could so far bind herself personally by an agreement to convey it (not objectionable as relating to a homestead or otherwise illegal) as to render herself liable in damages for breach of the contract. (*Hampe v. Sage,* 87 Kan. 536, 541, 543, 125 Pac. 53.)

3. It is contended that under the authority of *Shoop v. Burnside,* 78 Kan. 871, 98 Pac. 202, enforcement of the contract should be refused on account of the manner in which the defendant was induced to enter into it. There the prospective buyer procured a relative of the owner of the land, who was to receive a commission if a sale were made, to write misleading letters recommending it in the character of one having no interest except good will. Here the negotiations were conducted directly between the parties, who dealt at arm's length, and the only grounds of unfairness suggested are that the price was inadequate; the defendant lived out of the state; her husband was infirm; and she had not seen the tract and did not know what it was worth, while the plaintiff owned adjacent land, was a real-estate dealer, and familiar with values. These do not form a sufficient basis for holding the deal to have been unconscionable.

4. Another contention is that notwithstanding no denial of the allegations of the petition had been made it was incumbent on the plaintiff to prove the amount of damages (Civ. Code, § 129) and that no evidence was introduced. The journal entry as set out in the abstract contains a recital that the judgment was rendered "after hearing the evidence." Whatever the actual fact may be this court must act upon the theory that evidence was introduced unless

the record in the district court is changed so as to show the contrary. Moreover, it is obvious that the amount of damages allowed—$600—was not excessive, for in her letter refusing to carry out the contract she said she had a later offer of $1,775, and it does not appear to be seriously contended that the market value of the property at the time of such refusal was not as much as $1,800.

5. The court applied the proper measure of damages—the difference between the agreed price and the market value of the land at the time of the breach of the contract. In some of the states the courts follow, while in others they reject, the English rule that where the vendor has acted in good faith and a conveyance has been prevented by a defect in title unknown to him at the time the contract was made he is not required to compensate the purchaser for the loss of his bargain. (39 Cyc. 2106, 2110; 27 R. C. L. 633-635.) That rule would not in any event apply in the present case, for while the defendant did not have a full title to the land, there is nothing to indicate that the fact was not known to her when she agreed to make the sale, and the reason she gave for her refusal was that the price agreed upon was too low. It is to be remarked, however, that *Tracy v. Gunn,* 29 Kan. 508, which has sometimes been cited as supporting the English rule, dealt with a case of fraud, where full compensation was allowed, and in the opinion the inquiry was made—"Why should the good faith of the vendor diminish the actual damages which the vendee has sustained by reason of the breach of the contract?" (p. 511.) In *Lister v. Batson,* 6 Kan. 420, where a reversal was ordered because of an instruction allowing compensatory damages for the refusal of the vendor to carry out his contract to sell a tract of land, the property was a homestead and the contract, being made by the husband without the wife's consent, was a nullity. (*Thimes v. Stumpff,* 33 Kan. 53, 5 Pac. 431.)

The judgment is affirmed.